UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Global Switching, Inc. and Dollar
Phone Corp.,

                Plaintiffs,          CV-06-0412 (CPS)

      - against -           MEMORANDUM
                              OPINION AND ORDER
Hans K. Kasper, SkyMax Dominicana
Holdings, LTD., SkyMax Domincana,
LLC, and SkyMax Dominicana, S.A.

                Defendants.

----------------------------------------X
SIFTON, Senior Judge.

Plaintiffs Global Switching Inc., ("Global") and its
subsidiary, Dollar Phone Corp. ("Dollar") have applied for a
preliminary injunction against defendants Hans Kasper, SkyMax
Domincana Holdings, Ltd., SkyMax Dominicana LLC and SkyMax
Dominicana, S.A. (collectively, "SkyMax"), (1) prohibiting them
from the use of any account for corporate business other than the
jointly controlled Bermuda account used to date; (2) requiring
them to account for all receipts and expenditures from January 1,
2006; (3) prohibiting them from conducting any SkyMax business,
including the sale of prepaid calling cards, except as mutually
agreed upon by Moses Greenfield and Hans Kasper, as directors of
SkyMax; and (4) enjoining them from denying Global access to
company operational and financial information. For the reasons
set forth below the application is granted.

BACKGROUND

The following facts are taken from the submissions of the plaintiffs in connection with this motion and from the opinion of Judge Gleeson on plaintiffs' application for a temporary restraining order. They are undisputed except where noted.

SkyMax is engaged in the business of selling long distance telephone service in the Dominican Republic. In February 2005 Global entered into an investment agreement (referred to by plaintiffs and hereafter as the "Membership Agreement") under which Global purchased a fifty percent stake in SkyMax, for the price of $825,000 cash, and the promise of a future $825,000 line of credit. The other fifty percent interest in SkyMax was and is held by Hans Kasper who was and is the CEO of SkyMax. The Membership Agreement specified that disputes between the parties would be resolved through arbitration.

By letter dated January 17, 2006 Global notified Kasper that, among other things, it was terminating his employment because of his violations of his agreement with Global,[1] including his failure to submit an updated business plan.

On January 27, 2006 plaintiffs filed a arbitration demand alleging claims of fraud, breach of contract, and breach of fiduciary duty against Hans Kasper and requesting a determination

_____

[1] Kasper's agreement with Global refers to the Member's Agreement, the Equity Line of Credit Agreement, the Employment Agreement and the Memorandum of Association and Articles of Association.

of their rights under the parties' agreement. More specifically, plaintiffs alleged that Kasper had misrepresented the value of SkyMax in order to induce Global to purchase a fifty percent share, had failed to follow the terms of the parties' agreement and business plan, and had used resources of SkyMax and the money advanced by Global to SkyMax for his own and *ultra vires* purposes.

Although the Membership Agreement specifies that disputes are to be resolved by arbitration, it does not provide for injunctive relief pending arbitration. Accordingly, pending the arbitration, plaintiffs brought this action seeking a temporary restraining order and preliminary injunctive relief enjoining Kasper from "making any changes to the normal course of business." This motion was based on plaintiffs' belief that Kasper did not intend to pay an outstanding $300,000 debt to Verizon. Plaintiffs asserted that if the Verizon bill was not paid immediately, SkyMax would be shut down by Verizon and would not be able to provide long distance service to its wholesale carrier customers, thus irreparably harming SkyMax's business. Global proposed that its subsidiary, Dollar Phone, fund the Verizon payment by prepaying telecom services to be provided by SkyMax to Dollar Phone. In addition, plaintiffs sought an order that the $300,000 payment would not be considered a contribution to the $825,000 line of credit, but rather, would be considered

compensation for services to be provided in the ordinary course
of business.

On February 1, 2006, Judge Gleeson, sitting as the
miscellaneous judge in the absence of the undersigned, denied the
plaintiffs' request for a temporary restraining order. In doing
so, he noted that at oral argument before him defense counsel
represented that the outstanding Verizon bill would be paid
regardless of any payments made by Dollar Phone and that
accordingly, plaintiffs' counsel withdrew the application for an
order concerning the Verizon payment. Judge Gleeson then found
that plaintiffs' remaining argument, that absent a temporary
restraining order they would be damaged by (1) the loss of value
in their investment in SkyMax and/or (2) having to pursue
additional legal avenues (beyond arbitration) in order to obtain
relief, was too speculative to necessitate a temporary
restraining order. Judge Gleeson implied, without deciding, that
those allegations also did not entitle plaintiffs to a
preliminary injunction. Plaintiffs, agreeing that SkyMax's
ability and willingness to pay the $300,000 Verizon bill rendered
their motion for a preliminary injunction moot, then filed a
supplemental memorandum of law and a declaration by Moses
Greenfield, president of Global and Dollar phone, alleging
further grounds necessitating a preliminary injunction.

These new grounds are constituted by allegations that Kasper

has begun roll-out of a new prepaid cash calling card business
over Global's objection. Plaintiffs also allege that Kasper
unilaterally moved SkyMax's operating bank account from an
account at Butterfield Bank in Bermuda,[2] under the joint control
of both parties to a new offshore account under his exclusive
control.[3] Plaintiffs further allege that Kasper has instructed
SkyMax customers to communicate exclusively with him, to direct
funds to the new account and to provide no information to Global
representatives. Plaintiffs believe this violates section 4(d) of
the Membership Agreement which states that:

> all decisions relating to the Company and/or SkyMax or
> their respective subsidiaries which are set forth in
> Article 63B of the Articles of Association (the "major
> decisions") shall be undertaken only with the unanimous
> consent of the Members holding seventy-five percent
> (75%) of all issued and outstanding common shares.

Article 63B of the Articles of Association defines a long list of
major decisions. Those relevant here are as follows:

> . . .
> (k) any material change in the operation of the
> business of the Company or SkyMax
> . . .
> (p) changing or permitting to be changed in any
> substantial way the accounting process and procedures
> employed in keeping the books of account or preparing
> financial statements or income tax returns with respect

---

[2] Defendants appear to have mistakenly stated that the original account
was located in the British Virgin Islands. Without actually deciding the
location of the original account, in accord with the parties, I use Bermuda as
the location of that account throughout this opinion.

[3] Plaintiffs are unsure of the location of the new account. Defendant
has implied without explicitly stating that the money is now deposited in a
Dominican Republic account.

to the operation or management of the Company's or
SkyMax's business and assets;

DISCUSSION

In order to prevail on a motion for a preliminary
injunction, plaintiffs must satisfy two requirements. First, they
must show that absent a preliminary injunction they are likely to
suffer an irreparable injury. Second they must show that either
(a) they are likely to succeed on the merits of their case, or
(b) they have raised questions going to the merits that are
sufficiently serious to render them fair grounds for litigation,
and that a balancing of the hardships tips decidedly towards the
movant. *Bery v. City of New York,* 97 F.3d 689, 694 (2d Cir.
1996).

"Irreparable harm is the single most important prerequisite
for the issuance of a preliminary injunction . . .  Accordingly,
the moving party must first demonstrate that such injury is
likely before the other requirements for the issuance of an
injunction will be considered." *Id.* To satisfy the irreparable
injury requirement, plaintiffs must demonstrate that absent a
preliminary injunction they will suffer "an injury that is
neither remote nor speculative, but actual and imminent," and one
that cannot be remedied "if a court waits until the end of trial
to resolve the harm." *Freedom Holdings, Inc. v. Spitzer,* 408
F.3d 112, 114 (2d Cir. 2005) (citing *Rodriguez by Rodriguez v.
DeBuono,*, 175 F.3d 227,  234-35 (2d Cir. 1998). Furthermore,

irreparable harm is injury for which monetary damages cannot be adequate compensation. *Polymer Tech Corp. v. Mimram*, 37 F.3d 74, 82 (2d Cir. 1994).

In the present case, plaintiffs allege that if they are not granted a preliminary injunction they will be irreparably injured because Greenberg and Global will be denied their contractual rights to co-manage the SkyMax venture. More specifically, plaintiffs will lose the right to veto the new pre-paid calling card venture and will lose their right to access and monitor the funds paid to SkyMax. A party's loss of control of a business constitutes irreparable harm. *Wisdom Import Sales Co. v. Labatt Brewing Co.,* 339 F.3d 101, 114-15 (2d Cir. 2003); *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1205 (2d Cir.1970) (right to continue a business "is not measurable entirely in monetary terms"). *International Equity Investments, Inc. v. Opportunity Equity Partners, Ltd.,* 2005 WL 1307145, *23 (S.D.N.Y. 2005) *Suchodolski Associates, Inc. v. Cardell Financial Corp.,* 2003 WL 22909149, *4 (S.D.N.Y. 2003). *Street v. Vitti*, 685 F.Supp. 379, 384 (S.D.N.Y. 1988) (finding irreparable harm where forced sale of plaintiffs' shares would "destroy their voice in management").

Moreover, the harm to the plaintiffs is imminent because Kasper has already begun a venture to which plaintiffs do not consent. Kasper has also already transferred funds to an account solely under his control and instructed SkyMax customers not to

talk to plaintiffs. Thus, plaintiffs have already lost a measure of control over their business, and have already suffered irreparable harm.

Plaintiffs must also show that they are likely to succeed on the merits of their claim, here a breach of contract claim. Under New York law, "[t]o establish a prima facie case for breach of contract, a plaintiff must plead and prove: (1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach." *FlightSafety Intern., Inc. v. Flight Options*, LLC 2005 WL 3344827, *4 (E.D.N.Y. 2005)(quoting *National Market Share, Inc. v.. Sterling National Bank,* 392 F.3d 520, 525 (2d Cir. 2004). It is undisputed that a contract existed between plaintiffs and defendants. As established above, plaintiffs have and will suffer damages. Thus, the only remaining issue is whether defendants have breached the contract.

Pursuant to 4(d) of the Membership Agreement certain "major decisions" must have the approval of seventy-five percent of the outstanding shares. Since Global owns fifty percent of the shares, any such decisions must be approved by Global. According to Article 63B of the Articles of Association, these decisions include, in relevant part:

. . .

    (k) any material change in the operation of the
    business of the Company or SkyMax.

. . .

(p) changing or permitting to be changed in any
substantial way the accounting process and procedures
employed in keeping the books of account or preparing
financial statements or income tax returns with respect
to the operation or management of the Company's or
SkyMax's business and assets;
. . .

It is undisputed that Kasper has begun a new SkyMax
initiative under which SkyMax will sell pre-paid calling cards in
addition to long distance telephone service. It is also
undisputed that Global did not approve this plan, and in fact,
specifically disapproved it in its letter to Kasper of January
17, 2006. Defendants do not argue that expansion into a new area
of business is something less than a material change. Rather,
defendants argue that this new initiative is not a "material
change" to the business because this initiative was contemplated
in the business plan for 2004-2005. However, defendant offers no
argument why an initiative contemplated by the business plan may
not also be a material change for the business. Moreover, the
change was contemplated by the business plan for 2004-2005 and
was meant to be instituted in those years. Kasper's unilateral
decision to implement it in 2006 was not provided for in the
business plan (and could not have been since, according to
plaintiffs, Kasper failed to submit an updated business plan
after the 2004-2005 plan had expired). Thus, even if changes to
the business contemplated by the business plan cannot be
"material changes," Kasper's decision to move SkyMax into a new

area of business was a material change because it was not part of the business plan.

Similarly, Kasper's unilateral transfer of SkyMax funds into a different bank account in a different location, with potentially different tax consequences violates Article 63B of the Articles of Association, subsection(p). Kasper alleges that he effected the transfer because Global's accountant, Rachel Klein, was routinely late paying SkyMax bills and because Global's insistence on using a Bermuda bank account had negative tax implications for SkyMax. Rather, Kasper believe that profits earned in the Dominican Republic should be deposited in a Dominican Republic bank.

It does not matter whether Kasper is right that tax implications favor depositing funds in banks located in the country in which those profits were earned or whether Global is right that the funds are better deposited in Bermuda. The Articles of Association 63B(p) is clear that changes in the accounting process or in the preparation of tax returns must be approved by Global. It is undisputed that a change in the location of the account will have serious tax consequences, whether adverse or beneficial, and will accordingly necessitate changes in the preparation of tax returns. It is also undisputed that this change was not approved by Global.

Accordingly, Kasper's unilateral implementation of the pre-

paid phone card initiative and his unilateral transfer of SkyMax

funds from the Bermuda bank account accessible by both him and

Global to a undisclosed bank account accessibly only by him

constitutes a clear violation of the Articles of Association and

demonstrates that plaintiffs are likely to succeed on the

merits.[4] Accordingly, plaintiffs' motion for a preliminary

injunction is granted.


CONCLUSION

    For the reasons set forth above, plaintiff's motion for a

preliminary injunction is granted.

_____

    [4] Kasper argues that his actions were justified because they occurred
only after Global refused his request to furnish the $825,000 equity line of
credit in breach of their agreement. However, the affidavit of Global
president, Greenfield states that Kasper's first demand for the equity line of
credit came *after* Kasper was fired. If Greenfield's statement is true then
Global's refusal to furnish the line of credit is not a breach of their
contract. Moreover, even if Kasper's allegation that he demanded the equity
line of credit months before he was fired is true, his actions are still not
justified. Generally, one party's material breach allows the other party to
terminate the contract. *Frank Felix Associates, Ltd., v. Austin Drugs, Inc.,*
111 F. 3d 284, 289 (2d Cir. 1997). However, once a material breach has
occurred the wronged party must elect whether to terminate the contract, or to
continue with the contract and sue for partial damages. If the second party
elects to continue with the contract, it is not freed from its obligations
under the contract, despite the first party's breach. *Marvel Entertainment
Group, Inc. v. ARP Films, Inc.,* 684 F.Supp. 818, 820 (S.D.N.Y.,1988)(citing
*Cities Service Helex, Inc. v. United States,* 543 F.2d 1306 (1976)("The
innocent party can affirm the contract by his conduct and, in this regard,
'[t]he continued acceptance of benefits under the contract is the most common
and clearest case of election [to affirm the contract] by conduct.'")
In the present case, even if, as Kasper alleges, Global refused to furnish the
$825,000 equity line of credit a few months into the agreement, Kasper
indisputably continued to perform under the contract as he continued to run
SkyMax, to utilize Global's $825,000 cash payment and to interact with Global
personnel. Thus, even if Global's refusal to furnish the equity payment
constituted a material breach justifying Kasper's termination of the contract,
because he elected to continue with the contract, he is bound by its terms,
and accordingly is not freed from his obligation to have Global's approval for
major decisions.

The Clerk is directed to transmit a copy of the within to the parties.

SO ORDERED.

Dated :   Brooklyn, New York

February 16, 2006

By: /s/ Charles P. Sifton (electronically signed)
    United States District Judge